**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| **Lathrop Limited Partnership** | } | Docket No. 64-3-06 Vtec |
| **(Act 250 Application #9A0315)** | } | |
| | } | |

**Decision and Order on Pending Motions**

Appellant-Applicant Lathrop Limited Partnership ("Lathrop") appealed from the partial decision of the District #9 Environmental Commission ("District Commission") dated March 16, 2006, denying Lathrop's Act 250 Permit Application #9A0315 for positive findings under Criterion 10[1] for its 31-acre gravel pit and 700-foot access road on Lathrop's 70-acre tract of land in the Town of Bristol. Lathrop had applied and been approved for partial review with respect to Criterion 10 only, pursuant to former Environmental Board Rule 21 (EBR 21).[2]

Appellant-Applicant is represented by Mark G. Hall, Esq. Cross-Appellant John Moyers (Moyers) is represented by James A. Dumont, Esq., who also represents Interested Persons Kevin Harper, John C. Pickens, Russell and Mary Ann Rueger, Kelly Laliberte, and Carl and Caroline Engvall. The Natural Resources Board has intervened in this proceeding and is represented by Melanie Kehne, Esq. The Town of Bristol is participating in this proceeding and is represented by Amanda Lafferty, Esq.

Now pending are Lathrop's and Moyers's[3] cross-motions for summary judgment and Lathrop's motion under V.R.C.P. 6(d) for a continuance to file a responsive affidavit to the statement of facts accompanying Moyers's motion for summary judgment. Lastly, Lathrop requested a hearing on its summary judgment motion, so that it may present oral arguments.

---

[1] Criterion 10 is codified in 10 V.S.A. § 6086(a)(10). Lathrop requested that the District Commission review and issue positive findings under only a portion of Criterion 10, relating to its proposed project's conformance with the Town Plan. Lathrop classified its request for partial review as being under "Criterion 10(a)," although Criterion 10 does not have subsections. The District Commission followed Lathrop's reference to Criterion 10(a). While we find such a reference helpful and less wordy than referencing conformance with the Town Plan under Criterion 10, we choose to use the latter, wordier reference, so as to be in conformance with the statute.

[2] The former Environmental Board Rules, effective January 12, 2004, were in effect when Lathrop filed its application for partial review on December 2, 2005. Those Rules have since been replaced by the Act 250 Rules, which went into effect on May 1, 2006. Both Rules contain Rule 21, providing for partial review "with respect to any appropriate issue under the criteria or sub-criteria of the Act in any sequence" as a means to "avoid unnecessary or unreasonable costs."

[3] Appellant Moyers is joined in his summary judgment motion by Interested Persons Kevin Harper, John C. Pickens, Russell and Mary Ann Rueger, Kelly Laliberte, and Carl and Caroline Engvall. We hereinafter refer to the pending motion as the Moyers's motion, with no slight intended to the moving parties who joined Mr. Moyers.

After considering all the filings presented by all parties to date, the Court concludes that it has received sufficient factual representations and legal arguments to render final determinations on the pending summary judgment motions. We therefore decline to grant Lathrop's Rule 6(d) motion and request for hearing.

**Procedural Background**

The Court has some familiarity with the proposed gravel pit and access road that are the subject of this Act 250 appeal, since they are also the subject of an appeal from a conditional use determination made by the Town of Bristol Zoning Board of Adjustment (ZBA). The latter appeal has been pending before this Court for nearly two and a half years:[4] Appeal of Rueger, et. al., Docket No. 122-7-04 Vtec. After remand from the Supreme Court, the Rueger appeal was placed on inactive status, pending the outcome of Lathrop's Act 250 application which is now the very subject of this pending appeal. See Scheduling Orders dated September 27, 2005 and December 14, 2005 in Docket No. 122-7-04 Vtec.

One of the substantive issues[5] presented by the municipal appeal, Docket No. 122-7-04 Vtec, is similar, but not identical, to the issue presented in this Act 250 appeal, Docket 64-3-06 Vtec. In the municipal appeal, the first Question posed is whether the proposed quarry is in conformance with the Town of Bristol Zoning Bylaws & Regulations ("Zoning Regulations"); in the Act 250 appeal, the sole question presented is whether the proposed quarry is in conformance with the Town of Bristol Town Plan ("Town Plan"). The similarity of the respective legal issues in each appeal make it appropriate to reference and consider the determinations already made in the municipal appeal.[6] We do so below.

---

[4] The Rueger appeal was the subject of an interlocutory appeal to our Supreme Court, which remanded the matter back to this Court.

[5] Appellants in Docket No. 122-7-04 Vtec filed an amended Statement of Questions on December 13, 2005 that lists six Questions presented in that appeal.

[6] On the pre-trial question posed by the parties' summary judgment motions in the municipal appeal, namely whether the Zoning Regulations specifically prohibit a quarry or gravel operation from being sited in the RA-2 district, this Court previously held that the Regulations do not prohibit such an operation, specifically once it has been granted conditional use approval under Regulations § 526. See Decision and Order on cross-Motions for Summary Judgment, Docket No. 122-7-04 Vtec (May 5, 2005), and as revised by the Supplemental Decision and Order (June 23, 2005) and the Order of Clarification (July 8, 2005) (hereinafter collectively referred to as the Rueger Interim Decisions). The conditional use approval, with conditions, that was granted to Lathrop by the ZBA in its Decision of July 6, 2004 is the subject of the pending municipal appeal in Docket No. 122-7-04 Vtec.

**Factual Background**

The parties' respective filings reveal that the following facts are material to the legal issue now pending in this Act 250 appeal and are undisputed, unless otherwise noted below.

1.      Lathrop proposes to develop and operate a 31-acre gravel pit entirely within the Rural Agricultural 2-acre Zoning District ("RA-2 district") and adjacent to the Mixed Use Zoning District ("MIX district"). Lathrop's entire 70-acre parcel straddles both zoning districts. Lathrop once operated a pre-existing gravel pit on a portion of its property within the MIX district, but operation of that pre-existing pit ceased sometime before 1998.[7]

2.      Lathrop proposes to create a 700-foot access road to the gravel pit from River Street. The proposed access road lies partly within the MIX district.

3.      On December 2, 2005, Lathrop applied to the District Commission for partial review of Lathrop's proposed gravel pit and access road under Act 250 Criterion 10.

4.      On March 16, 2006, the District Commission denied Lathrop's request for positive findings as to conformance with the Town Plan under Criterion 10, concluding that gravel pits are prohibited in the RA-2 district by the terms of the Town Plan. The District Commission also concluded that the portion of the proposed access road within the MIX district is in conformance with the Town Plan.

5.      Lathrop appealed the District Commission's conclusion that the gravel pit does not conform to the Town Plan; Moyers appealed as to the District Commission's conclusion that the access road does conform to the Town Plan.

**Discussion**

Our Supreme Court has consistently directed that when ruling on a motion for summary judgment, we must view the relevant evidence in a light most favorable to the non-moving party and may only grant the motion if the applicable legal standards require an entry of judgment in the moving party's favor. See Toys Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990) ("The party against whom summary judgment is sought is entitled to the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists.") (citing

---

[7] See Rueger Interim Decision (May 5, 2005) at 2.

Creighton v. Town of Windsor, 154 Vt. 348, 352-53 (1990)). It is with this standard in mind that we review each parties' pending summary judgment motion.

1.      **Lathrop Motion for Summary Judgment**

Criterion 10 of Act 250 requires that the proposed development be "in conformance with any duly adopted local or regional plan," 10 V.S.A. § 6086(a)(10). The District Commission based its March 16, 2006 denial of Lathrop's partial application on a narrow conclusion: that Bristol's Town Plan allows only agricultural, residential, and commercial uses in the RA-2 district. The District Commission further concluded that since Lathrop's proposed gravel pit cannot be defined as a "commercial use," it fails to conform to the Town Plan. District Commission Partial Findings of Fact, Conclusions of Law, and Order dated March 16, 2006 (District Commission Decision), at 9–10, 12.

Lathrop's appeal of the District Commission determinations presents this Court with what amounts to a question of pure law: does the Bristol Town Plan generally prohibit the operation of a gravel pit in the RA-2 district? If the Town Plan does prohibit gravel pits in the RA-2 district, then we must deny Lathrop's permit application. If, on the other hand, the Town Plan falls short of specifically prohibiting gravel pits in the RA-2 district, then Lathrop's permit application appeal may proceed before this Court. We conclude that the Town Plan contains no such specific prohibition. But we cannot fully grant Lathrop's pending summary judgment motion, because we find that material facts as to its specific proposed gravel pit and the propriety of granting it conditional use approval remain in dispute. Thus, we conclude that the proper procedural course to chart for this appeal is to schedule a hearing on the merits to resolve those disputed factual issues.

The Bristol Town Plan, as with most town plans in Vermont, is self-described as "a statement of goals, policies, strategies and programs adopted by [its] citizens . . . to guide future growth within" their town. Town Plan at 1. Such documents usually offer generalized goals and philosophies on desired land use and do not often contain the specific authorizations and prohibitions concerning land use contained in zoning regulations.

The Bristol Town Plan states generally that "[d]evelopment in Bristol is based upon the permitted uses and conditional uses that are allowed within the district in which the development is proposed . . . . Specific permitted uses, conditional uses, minimum lot sizes, etc, are set forth

in the Town Zoning Regulations." Town Plan § 5.1.1. The Town Plan goes on to address the RA-2 district specifically, as follows:

> Much of the RA-2 (Rural Agricultural, 2 acre) district consists of areas where soils possess good-to-moderate capability for on-site sewage disposal and where direct access from existing town roads is available. The district is intended to be primarily a mix of residential and agricultural uses with cluster development desirable. Additional requirements for this district are given in 5.1.2 below.

Id. (emphasis added).

Review of a proposed project for its conformance with a Town Plan in the course of an Act 250 proceeding requires a good measure of discipline. Such review should not supplant or supersede the review of a project's conformance with zoning regulations; the latter is the domain of appropriate municipal panels. Decisions of the former Environmental Board, which had jurisdiction over appeals from the district commissions before the Permit Reform Act went into effect on January 31, 2005, provide excellent guidance on how to properly conduct a review of a proposed project's conformance with various Act 250 criteria (ten in number, although counting the various sub-criteria, the total reaches 27). In fact, this Court has been instructed to give the decisions of the former Environmental Board "the same weight and consideration as prior decisions of" this Court. 10 V.S.A. § 8504(m).

The Environmental Board recently provided succinct guidance on the manner in which to analyze a town plan when considering whether a proposed project conforms to it and therefore complies with Criterion 10. In Re: Times and Seasons, LLC Hubert K. Benoit, Docket No. 3W0839-2-EB, Findings of Fact, Conclusions of Law and Order (Vt. Envtl. Bd., Nov. 4, 2005), the Environmental Board established a two-step process for analyzing a town plan. The Board advised that a determination must first be made as to whether the applicable language from the Plan is "mandatory or . . . merely provide[s] guidance." Id. at 58. Second, the Board directed that a determination must be made as to whether "the town plan's provisions [are] specific or ambiguous." Id.

Both Lathrop and Moyers provided thorough analysis of the Board precedent announced in Times and Seasons, as well as the other Board decisions cited therein. We need not repeat their thorough analysis here, as we conclude that the applicable language in the Bristol Town Plan is not mandatory, but merely provides unambiguous guidance as to how proposed

commercial development will be reviewed in the RA-1, RA-2 and RA-5 districts. Town Plan § 5.1.2.

The District Commission, noting that the use of the word "primarily" in Town Plan § 5.1.1 indicates that "uses other than residential and agricultural uses may be allowed in the RA-2 District," turned to § 5.1.2 to determine what other uses may be allowed in the RA-2 district. Section 5.1.2 is titled "Commercial Development" and states that "[w]ithin the RA-1, RA-2 and RA-5 districts, commercial development will be controlled through the conditional use process." The Town Plan does not define the term "commercial development." No definition of that specific term is found in the Zoning Regulations, either. Unfortunately, it appears that the District Commission interchanged the Plan's use of the term "commercial development" with the Regulation's definition of the specific zoning classification for "commercial uses." We conclude that this was error and cannot follow its logic in this de novo proceeding.

Read in context with all of Town Plan § 5, we conclude that the use of the term "commercial development" in § 5.1.2 follows the every-day reference to all development that is not residential or agricultural. This common use of the phrase "commercial development" incorporates development of land conducted for industrial or manufacturing uses. Such uses are specifically addressed in the Zoning Regulations, but are not specifically regulated in the Town Plan. In fact, such uses do not receive the same level of analysis[8] in Town Plan § 5 as does the term "commercial development." Were we to adopt the conclusion that Section 5 provides a specific regulatory direction, one conclusion could be that the Plan absolutely prohibits industrial and manufacturing development in all but the COM-1 and MIX districts. We decline to reach such an interpretation here.

There is no subsection in Town Plan § 5 devoted to a discussion of "industrial development" or "manufacturing development," but there is a specific subsection devoted to a discussion of "commercial development": Town Plan § 5.1.2. That subsection notes that such development is to be given "careful consideration" in the conditional use review process. As this Court has previously held, Zoning Regulations § 526 provides that sand and gravel extraction

---

[8] Town Plan § 5.1.1 contains provisions that discuss uses in the COM-1 and MIX districts. The former has a reference to providing "opportunities for small-scale commercial and industrial development." The section which discusses the MIX district advises that "heavy manufacturing should not be permitted." Both references are brief and of an advisory nature only; neither rise to the level of a mandatory prohibition of such uses. Neither reference causes us to interpret Town Plan § 5.1.2 in a more restrictive manner than noted above.

projects may be permitted "in any district . . . only after conditional use review and approval by the Board of Adjustment." Id.; see also Rueger Interim Decision (May 5, 2005) at 4.

The District Commission concluded that under § 5.1.2 only "commercial uses," as that term is defined in the Town's Zoning Regulations at § 130, can be afforded zoning approval through the conditional use process. District Commission Decision at 10. The Commission based this conclusion on its understanding that "it is the intent of [§ 5.1.2] to ensure the 'compatibility of commercial and residential uses' within the District." Id. For the reasons noted above, we decline to adopt a similar conclusion. The plain intent of § 5.1.2 is to guide the conditional use review process, and it is that zoning process, and not the Town Plan, which controls commercial development in the RA-2 district. While the proposed gravel pit is not a "commercial use" as that term is defined in § 130 of the Town Zoning Regulations,[9] we conclude that under the Town Plan, the proposed gravel pit is a "commercial development" which the Town Plan does not preclude. Again, the Town Plan does not specifically prohibit such development, but rather recommends that they be controlled through the conditional use review process.

Because the Bristol Town Plan does not itself specifically prohibit gravel pits, quarries, or any other commercial development in the RA-2 district, the District Commission erred in concluding that no quarry in the RA-2 district could conform to the Town Plan. Lathrop's motion for summary judgment must therefore be granted, and the District Commission's ruling that quarries are prohibited as a matter of law in the RA-2 district cannot be adopted here.

It is important to note that the District Commission's decision was based on its answer in the negative to the threshold question of whether any quarry could be permitted in the RA-2 district. The question remains as to whether the specific quarry that Lathrop proposes is in conformance with the Town Plan. Our conclusion that the Plan does not prohibit all quarries in the RA-2 district does not automatically bring about a conclusion that Lathrop's specific quarry is in conformance with the Town Plan.

Viewing the material facts in a light most favorable to Mr. Moyers and those who have joined him to oppose the pending motion, Lathrop's proposed sand and gravel quarry project could be viewed as the largest and most significant quarry in the region. Its life span could

---

[9] In Regulations § 130, the definition of "commercial use" excludes "light or heavy industry." Sand and gravel extraction is included in the definition of "quarries," and quarries are included within the definition of "heavy manufacturing or industry."

extend over 54 years; during its life, an estimated 3.2 million yards of gravel, weighing approximately 7.2 million tons would be extracted from a 31-acre section of Lathrop's 70-acre parcel, leaving a pit, even after reclamation, with 120-foot high walls and steep slopes. Such facts are material to our determination of whether the specific gravel extraction operation Lathrop proposes is in conformance with the Town Plan, and those facts, as well as the possible future impact of this quarry, remain in dispute. We therefore decline to grant Lathrop's request that we summarily conclude that its proposed project is in conformance with the Town Plan. Such a determination must be left to a trial, where all parties will have the opportunity to present all relevant evidence so that this Court may make a fully informed determination of the material facts.

**2.      Moyers's Motion for Summary Judgment**

Cross-Appellant Moyers moves for summary judgment seeking two rulings: first, that this Court affirm the District Commission ruling below that Lathrop's application for a gravel pit in the RA-2 district does not conform to the Bristol Town Plan, and second, that this Court reverse the District Commission ruling below that Lathrop's application for the construction and use of an access road in the MIX district conforms to the Town Plan.

We addressed the District Commission ruling regarding the conformance of the proposed gravel pit in the RA-2 district above, in the context of Lathrop's motion for summary judgment. Since the Town Plan does not prohibit gravel pits in the RA-2 district, Moyers's motion must be denied as to this first issue.

Turning to the second issue presented by Moyers's motion, Moyers argues that the District Commission erred in concluding that the proposed access road conforms to the Town Plan. The District Commission reasoned that, even though "heavy manufacturing should[10] not be permitted" in the MIX district (Town Plan § 5.1.1) the proposed access road is not prohibited by the provisions in the Town Plan relating to lawful uses in the MIX district. The District Commission explained that:

> [T]he only activity occurring within the MIX District involves the construction of the access road, grading and reclamation. There are no plans to use the area within the MIX District for any use other than providing access to the sand and gravel pit within the RA-2 District. A majority of the Commission finds this

---

[10]    As noted above, we regard the term "should" as advisory in nature. It does not denote the mandatory characteristic of the word "shall," which the Town Plan drafters were certainly free to use.

> activity consistent with the objectives of the MIX District provided there is no quarrying in the MIX District.

District Commission Decision at 12.

Moyers argues that the access road cannot be viewed in isolation, but rather must be viewed as a quarrying use, since it is proposed to serve a quarry. Moyers points out that the definition of the term 'quarrying' in Bylaws § 130 includes "stone extraction operations and any land development incidental thereto." Moyers argues that "[t]he access road is 'land development incidental to' the extraction of stone and thus it is part of the operation of a quarry. By definition, it is quarrying." Moyers Mot. for Summ. J. at 8.

It bears repeating that a determination of whether a proposed project conforms to a town plan is no substitute for the more detailed analysis before an appropriate municipal panel of whether the same proposed project conforms to the applicable zoning regulations. In this case, the latter analysis will be the subject of a merits hearing in the pending Rueger appeal, Docket No. 122-7-04 Vtec. We decline to delve into such detailed analysis here.

In order to grant the summary judgment Moyers now seeks, we must conclude that the Town Plan must be interpreted so as to specifically prohibit from the MIX district all access roads that would only serve a gravel extraction operation. For the same reasons as provided above, and as provided in the Rueger Interim Decisions, we cannot reach such a summary determination. We therefore decline to grant Mr. Moyers's motion and leave the final determination to be made after all relevant evidence is introduced at trial.

### 3. Lathrop Motion for Continuance

Lathrop argues that Moyers's detailed, 54-paragraph statement of material facts is immaterial to the present appeal, and that Lathrop should either be relieved from responding to it or be granted a continuance on the need to respond to the allegations in the Moyers's Statement "until the underlying legal issue is determine[d]." Lathrop Mot. to Continue at 3.

Our decision partially granting Lathrop's motion for summary judgment and denying Moyers's motion for summary judgment renders Lathrop's motion for a continuance as moot. Given the time that has already elapsed since this appeal and the related Rueger appeal were filed, we conclude that the more efficient use of the parties' and the Court's limited resources is to proceed to trial.

## Order

Accordingly, for the reasons given above, it is hereby ORDERED and ADJUDGED that Lathrop's motion for summary judgment is **GRANTED** to the extent that we conclude that the Town Plan does not prohibits quarries or gravel extraction operations generally from the RA-2 district. To the extent that Lathrop also requests we summarily conclude that its specific proposed project conforms with the Town Plan, we **DECLINE** to do so, but rather leave that specific determination to be made after all parties are afforded an opportunity to present all relevant evidence.

Moyers's motion for summary judgment is **DENIED** in all respects. Lathrop's motion for a continuance is **DISMISSED** as moot.

A pretrial conference shall be held in accordance with the attached Notice of Hearing to discuss the scheduling of a trial on the remaining issue of whether Lathrop's specific gravel pit proposal should receive positive findings under Criterion 10, as it relates to conformance with the Bristol Town Plan. The undersigned judge will preside over the pre-trial conference. The Court requests that the parties be prepared at the pre-trial conference to discuss the propriety of consolidating this Act 250 appeal with the remaining issues in the municipal conditional use review application that is the subject of the Rueger appeal (Vt. Envtl. Ct., Docket No. 122-7-04 Vtec).

Done at Berlin, Vermont this 29th day of November, 2006.

_____
Thomas S. Durkin, Environmental Judge